IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACOB DAVIS, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 19-CV-463-K-BK |
| | § | |
| CITY OF ALVARADO, ET AL., | § | |
| | § | |
|     DEFENDANTS. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order Referring Case*, Doc. 37, this case has been referred to the undersigned United States magistrate judge for pretrial management. The cause is now before the Court for a recommendation on *Defendants' Second Motion & Brief to Dismiss*. Doc. 21. For the reasons set forth herein, it is recommended that the motion be **GRANTED**.

**I.  BACKGROUND**

In April 2019, Plaintiff filed the operative complaint – his third amended – raising a number of claims against (1) the City of Alvarado (the "City"); (2) the City Police Department (the "APD"); (3) APD Chief Brad Anderson ("Chief Anderson"); and (4) APD police officers Matthew Dill, Solomon Omotoya, and Chad Marshall. Doc. 20. Plaintiff alleges that prior to the events that underlie this dispute, he purchased a "homemade" trailer that had been issued license plates for more than ten years, but had no vehicle identification number ("VIN"). Doc. 20 at 3. After the purchase, Plaintiff conveyed the trailer to his corporation JKD Industries, Inc. ("JKD"), which registered it and then bailed it to Plaintiff at an unspecified time. Doc. 20 at 3.

In November 2018, Plaintiff was towing the trailer through the City with his grandfather and children and stopped to refuel his truck on their way out of town. Doc. 20 at 3. While Plaintiff was pumping gas, Officers Dill and Omotoya allegedly approached him without any legal cause and asked who the owner of the trailer was and if he had any "papers" for it. Doc. 20 at 4. Plaintiff responded that he was the owner, produced a registration receipt, and informed the officers that he had purchased the trailer homemade and there was no VIN that he knew of. Doc. 20 at 4. Officer Dill informed Plaintiff that if the trailer did not have a VIN, it was presumed to be stolen and Plaintiff would have to take it to the APD. Doc. 20 at 4-5.

Officers Dill and Omotoya then asked Plaintiff what was in the trailer and proceeded to search it for the next 30 minutes. Doc. 20 at 5. After they determined that the trailer had no VIN, they escorted Plaintiff to the APD where they informed him they were going to "seize the trailer." Doc. 20 at 5. Plaintiff went inside to speak to Chief Anderson who informed him that he would rely on Officer Dill's decision concerning the seizure because Officer Dill was the "authority on the legalities of trailers." Doc. 20 at 5. After some time, Plaintiff and his family continued on their trip in a borrowed trailer and left Plaintiff's trailer at the APD where it remains. Doc. 20 at 5-6.

Plaintiff avers that his trailer has never had a VIN and was not required to because it was homemade, rather than manufactured. Doc. 20 at 3, 10-11. As such, Plaintiff contends that the trailer was not contraband subject to seizure, yet Officer Dill commenced a forfeiture proceeding in Justice of the Peace Court in Johnson County ("JP Court"). Doc. 20 at 6. Plaintiff also contends that around this time, Officer Marshall obtained an arrest warrant for Plaintiff, which was subsequently recalled, and then filed a misdemeanor charge against Plaintiff for having a fictitious license plate. Doc. 20 at 10. Plaintiff alleges, on information and belief, that (1)

2

Defendants have a history of "bringing spurious and groundless criminal charges against persons such as Plaintiff," and (2) Officers Dill and Marshall "routinely file forfeiture proceedings in [JP Court] even though they are not attorneys," which forfeitures benefit the City or the APD. Doc. 20 at 10-12.

In detailing his specific causes of action, Plaintiff states that (1) the fact that his trailer had no VIN did not raise a presumption that it was stolen or otherwise illegal and, because there existed no "articulable facts that create[d] some reasonable inference of criminal conduct," the search and seizure of the trailer violated his Fourth Amendment rights[1]; and (2) Defendants' attempts to forfeit his rights in the trailer violate the Eighth Amendment's prohibition against excessive fines. Doc. 20 at 7, 11-12. Plaintiff seeks actual and punitive damages, a declaratory judgment to the effect that his trailer is not stolen or contraband and that he is the legal owner thereof, and attorneys' fees and costs. Doc. 20 at 12-13. Defendants now move to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 21.

## II.    APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's

---

[1] Plaintiff also makes a passing reference to his Fourteenth Amendment rights and the right to be secure "in his person" from unreasonable searches and seizures, but does not flesh out either contention in the operative complaint. Because he is represented by counsel, the Court declines to liberally construe his complaint to raise such claims. *Cf. Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (stating that a document filed by a *pro se* party must be liberally construed and held to less stringent standards than formal pleadings drafted by attorneys).

3

complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, Plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. A court may begin its assessment with either prong. *Id.* at 236 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)).

4

A municipality does not automatically incur section 1983 liability for injuries caused solely by its employees, and it cannot be held liable under section 1983 on a *respondeat superior* theory. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691, 694 (1978); *Johnson v. Deep East Tex. Reg'l Narcotics*, 379 F.3d 293, 308 (5th Cir. 2004). Rather, to establish municipal liability, a plaintiff must show that (1) an official policy (2) promulgated by a municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted).

A policy or custom can be either (1) a policy statement or rule that is officially promulgated by the county's lawmaking officers or a delegated official; or (2) a persistent, widespread practice of county officials or employees, which is so common and well settled as to constitute a custom that fairly represents county policy. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). In describing the term "custom," the Supreme Court has used such phrases as "persistent and widespread . . . practices," "systematic maladministration" of the laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out . . . policy." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970). A municipality is almost never liable for an isolated unconstitutional act on the part of an employee. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given policy or custom is an essential condition underlying section 1983 municipal liability. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A plaintiff thus must demonstrate either actual or constructive knowledge of the custom, which is attributable either to the governing body of the municipality or to an official who has been designated as a policymaker. *Bennett*, 735 F.2d at 862. Where an official policy or practice is unconstitutional

on its face, it is assumed that a policymaker is aware of both the policy and that a constitutional violation will most likely occur. *Burge*, 336 F.3d 370. Where, however, an alleged policy or custom is facially innocuous, a plaintiff is required to show that "it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (citation and internal quotation marks omitted). Finally, to show that the policy at issue was the moving force behind the constitutional violation, there "must be more than a mere 'but for' coupling between cause and effect"; the policy "must be closely related to the ultimate injury" and have "actually caused" the constitutional violation complained of. *Johnson*, 379 F.3d at 310.

## III. ARGUMENTS AND ANALYSIS

### A. Plaintiff's Standing

As an initial matter, Defendants assert that JDK, not Plaintiff, owned the trailer at the time of the underlying events and Plaintiff thus lacks standing to maintain an action alleging violations of his personal civil rights. Doc. 21 at 11-12. Plaintiff responds that, as the bailee in possession of the trailer, he may sue for injuries to that property and recover damages for its conversion. Doc. 28 at 11-12.

On this point, Plaintiff is correct. *See U.S. v. $321,470.00, U.S. Currency*, 874 F.2d 298, 304 (5th Cir. 1989) ("No one can question the standing of a bailee or agent to attack a forfeiture of property subject to a lawful or even colorably lawful bailment or agency . . . The right of such bailees or agents to be protected from unreasonable searches and seizures is not affected by this decision."); *In re Sunpoint Securities, Inc*., 377 B.R. 513, 550 (Bankr. E.D. Tex. 2007) (holding that the bankruptcy trustee, as bailee of the debtor's customers' property, had standing to bring any actions which the customers could have brought) (citation omitted); *see also* 6 Wayne R.

6

LaFave, SEARCH AND SEIZURE §11.3(f) (5th ed. Oct. 2019) ("A person who is not the owner of the container but who possesses it by virtue of his status as bailee certainly has standing to object to illegal interference with his possessory interest."). Defendants are not entitled to dismissal based on this argument.

### B. Claims Against APD

APD argues that because it is merely a division of the City, it is not a jural entity subject to suit. Doc. 21 at 12-13. Plaintiff did not respond to this argument and, upon consideration, the Court concludes that APD is correct. *See Curs v. Melson*, No. 4:15-CV-767-A, 2015 WL 8347293, at *4 (N.D. Tex. Dec. 8, 2015) (McBryde, J.) (holding that the APD is not an entity capable of being sued) (citing *Darby v. Pasadena Police Dep't.*, 939 F.2d 311, 313 (5th Cir. 1991)).

### C. Municipal Liability

The City asserts that Plaintiff has failed to a claim against it because he has not identified a policymaker or alleged any facts showing how a policymaker was involved in setting any particular policy or widespread custom that resulted in a violation of his civil rights. Doc. 21 at 14-16.

Plaintiff responds that a "practice and procedure" that allowed violations of his civil rights "can be surmised" because (1) "all Defendants know" that his trailer is not illegal and that its seizure was thus improper, and (2) "the Defendants [have a] history of bringing spurious and groundless criminal charges against persons such as Plaintiff." Doc. 28 at 9. Plaintiff also claims that further evidence of this practice is Chief Anderson's statement that Officer Dill "was the authority on the legalities of trailers and that he would rely on his legal decision concerning the seizure of Plaintiff's trailer." Doc. 28 at 9.

7

Although the City points out that the operative complaint does not identify a policymaker, pointing to a specific policymaker is not required at the motion to dismiss stage as that is a question of law rather than fact. *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016). Nevertheless, the complaint must allege facts that show an official policy was promulgated or a widespread custom was ratified by an APD policymaker. *Id.* at 284. The plaintiff in *Groden* carried his burden of connecting the policy at issue to the city council by alleging that the city publicly announced the policy and that its spokesperson granted the media interviews in which he described the new policy. *Id.* at 286.

Plaintiff's complaint fails to make such a connection as he does not allege that Chief Anderson or any other person or entity is a policymaker, let alone that such an individual or entity promulgated an official policy or ratified the alleged custom of which Plaintiff complains. *Cf. Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 951 (N.D. Tex. 2014) (holding that plaintiffs sufficiently pled that the chief of police was a policymaker where they alleged that a city councilman had recently confirmed the city council's delegation of policymaking authority for police officer training to the chief).

Plaintiff also does not adequately allege the existence of an official City policy or of a custom that permits either the filing of baseless criminal charges or the illegal seizure and forfeiture of private property. Doc. 20 at 10. Indeed, Plaintiff's only mention of the City in his complaint is to note that it profits from the allegedly illegal forfeiture scheme.[2] *See* Doc. 20 at 1

---

[2] Additionally, many of the allegations in Plaintiff's operative complaint are nothing more than "shotgun" pleadings and should be disregarded. *See Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (holding that the allegations of a "shotgun pleading" must be disregarded where it uses blanket terms to address all defendants collectively or asserts multiple claims against multiple defendants without specifying which defendants are responsible for which acts). *See, e.g.*, Doc. 20 at ¶ 19 ("The trailer remains in the possession of the Defendants"; Doc. 20 at ¶ 21

8

(alleging that the City receives income from the APD's illegal activities); Doc. 20 at 12 (claiming that the illegal forfeiture of seized property directly benefits the City). This does not speak to whether the City itself has a policy or custom allowing such activities. *Bennett*, 735 F.2d at 862.

Even assuming Plaintiff is attempting to identify such a custom by virtue of the Defendant APD officers' actions, the only specific scenario he discusses is the incident that involves him. But to plausibly plead a widespread custom or practice for Rule 12(b)(6) purposes, a plaintiff must do more than describe the incident that gave rise to his injury. *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). Moreover, stating in general terms that the custom which caused the plaintiff's injury also has caused injuries to others is not sufficient. For example, a black motorist arrested without probable cause failed to state a Fourth Amendment claim when she contended that her arrest resulted from the police department's general policy of disregarding black citizens' rights and engaging them without probable cause. *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiff's claims suffer the same infirmity as he alleges only in broad terms that "Defendants have a history of bringing spurious and groundless criminal charges against persons such as Plaintiff" and "routinely file forfeiture proceedings" in court. Doc. 20 at 10-11. The City is entitled to dismissal of Plaintiff's claims.

---

("Defendants, acting through Officer Dill and without counsel, commenced a forfeiture proceeding in [JP Court] in Johnson County."); Doc. 20 at ¶ 36 ("On information and belief, the Defendants routinely file forfeiture proceedings in [JP Court] of Johnson County.").

### D.      Fourth Amendment Claims

*1. Officers Dill and Omotoya*

Officers Dill and Omotoya argue that dismissal of the claims against them is warranted because Plaintiff's pleadings and publicly available judicial records from the JP Court proceedings demonstrate that they followed state law in detaining and seizing the trailer and then seeking its forfeiture.  Doc. 21 at 17-21.  Further, Officers Dill and Omotoya assert that they are entitled to qualified immunity because Plaintiff has not established a violation of his constitutional rights, let alone demonstrated that their actions were objectively unreasonable in light of clearly established law at the time of the incident.  Doc. 21 at 25-26.

Plaintiff responds that the "crux of this case" is whether Texas law allows homemade trailers to be operated without a VIN.  Doc. 28 at 7-8.  He concludes that it does and because his trailer is homemade, Officers Dill and Omotoya had no probable cause to believe that he had violated any law, there was no probable cause to search his trailer, and there were no exigent circumstances justifying its seizure.  Doc. 28 at 8, 10-11.  Plaintiff further contends that Officers Dill and Omotoya waived their qualified immunity defense by removing this case from state court.  Doc. 28 at 12-13.

As an initial matter, Plaintiff's waiver argument is baseless.  *See Estrada v. Healey*, 647 Fed. App'x 335, 339 n.5 (5th Cir. 2016) (summarily rejecting plaintiff's "strange argument" that defendants had waived their entitlement to qualified immunity by removing the case from state court to federal court).  Considering the merits, Plaintiff's complaint states that Officers Dill and Omotoya approached him without probable cause while he was pumping gas to ask about paperwork on the trailer and where its VIN was located.  Doc. 20 at 3-4.  Probable cause was not required, however.  Plaintiff was pumping gas when Officers Dill and Omotoya approached him;

10

they thus did not "stop" him. *Cf. Terry v. Ohio*, 392 U.S. 1, 26-28 (1968) (holding that a police officer may conduct a brief investigative stop and frisk of an individual who the officer reasonably suspects is engaging in criminal activity).

Once Plaintiff told Officers Dill and Omotoya that his trailer had no VIN, they had probable cause to believe it was illegal. *See* TEX. TRANSP. CODE § 501.158(a)(2) (providing that police may "seize a *vehicle* without a warrant if the officer has probable cause to believe that the vehicle . . . has had the serial number [VIN] removed, altered, or obliterated.") (emphasis added). A trailer is defined as "a *vehicle* that (A) is designed or used to carry a load wholly on the trailer's own structure; and (B) is drawn or designed to be drawn by a motor vehicle."). TEX. TRANSP. CODE § 501.002(29) (emphasis added). Upon seizure for lack of a VIN, Plaintiff's trailer was permissibly treated as stolen for purposes of custody and disposition and, thus, was properly searched. *See York v. State*, 373 S.W.3d 32, 34 & n.5 (Tex. 2012) (upholding the seizure of a trailer without a VIN) (citing TEX. TRANSP. CODE § 501.158(b)); *see also Colorado v. Bannister*, 449 U.S. 1, 3 (1980) (holding that a warrantless search of a vehicle is permitted when probable cause exists to believe a crime has occurred).

Perhaps Plaintiff is correct that the law treats homemade and manufactured trailers differently with respect to the need for a VIN. But any mistake Officers Dill and Omotoya may have made in that regard does not establish an actionable constitutional violation. Even law enforcement officials who "reasonably but mistakenly" violate an individual's Fourth Amendment rights are entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

11

*2. Chief Anderson and Officer Marshall*

Chief Anderson and Officer Marshall both move to dismiss the claims against them on the basis of, *inter alia*, qualified immunity.  Doc. 21 at 25-26.  Plaintiff does not mention either of these Defendants in his response except to argue that they waived.  As stated previously, that argument wholly lacks merit.  *See supra* at 10.  Plaintiff thus has abandoned his claims against Chief Anderson and Officer Marshall by failing to address their arguments on the merits.  *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that plaintiff had abandoned her claim when she failed to defend it in response to a motion to dismiss).

### E.  Eighth Amendment Claim

Plaintiff alleges in his complaint that Defendants' attempts to deprive him of his trailer violate the Eighth Amendment's prohibition against excessive fines.  Doc. 20 at 7.  Defendants assert that this challenge fails because they followed the required procedures in seizing and retaining the trailer.  Doc. 21 at 22-23.

Plaintiff does not address this argument except to posit that the Supreme Court has "held that civil *in rem* proceedings violate the Excessive Fines Clause of the 8th Amendment."  Doc. 28 at 9-10 (citing *Timbs v. Indiana*, 139 S. Ct. 682 (2019)).  *Timbs* did not so hold, however, but instead concluded that such proceedings are "subject to" an Eighth Amendment challenge and remanded for resolution.  139 S. Ct. at 689-90.  Defendants are entitled to dismissal of this claim because Plaintiff has otherwise abandoned it.  *Black*, 461 F.3d at 588 n.1.

### F.  Declaratory Judgment Claim

When a state petition seeking declaratory relief is removed to federal court, it is converted into an action brought under the federal Declaratory Judgment Act (the "Act").  28 U.S.C. § 2201; *Ahmed v. The Bank of New York Mellon*, No. 3:17-CV-2821-S-BK, 2018 WL

12

4084293, at *3 (N.D. Tex. Aug. 8, 2018) (citation omitted), *adopted by* 2018 WL 4078271 (N.D. Tex. Aug. 27, 2018) (Scholer, J.). The Act provides that a federal court may declare the rights and legal relations of any interested party. *See* 28 U.S.C. § 2201(a). However, the availability of a declaratory judgment depends upon the existence of an underlying judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). In other words, a declaratory judgment action is merely a vehicle that allows a party to obtain an "early adjudication of an actual controversy" arising under other substantive law. *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). In the instant case, because Defendants are entitled to dismissal of Plaintiff's claims for the reasons set forth above, he is not entitled to relief under the Act.

## IV. CONCLUSION

For the foregoing reasons, *Defendants' Second Motion & Brief to Dismiss*, Doc. 21, should be **GRANTED** and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on December 3, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

13

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).